# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

FRANKLIN CAPITAL HOLDINGS, LLC,   )
           )
     Plaintiff,      )
           )    No. 23-cv-02951
    v.          )
           )    Judge Andrea R. Wood
FUELL INC., et al.,      )
           )
     Defendants.   )

## MEMORANDUM OPINION AND ORDER

Plaintiff Franklin Capital Holdings LLC ("Franklin") has brought this action against Defendants Fuell, Inc. ("Fuell") and Francois-Xavier Terny, Fuell's Chief Executive Officer ("CEO"), alleging breach of contract and seeking enforcement of a guaranty, in connection with a commercial factoring agreement. Before the Court are cross-motions for summary judgment filed by Franklin and Terny.[1] For the reasons that follow, Franklin's motion for summary judgment (Dkt. No. 49) is granted, while Terny's motion for summary judgment (Dkt. No. 59) is denied.

## BACKGROUND

The following facts are undisputed unless otherwise noted.

Fuell manufactures and sells electric bicycles. (Defs.' Resp. Pl.'s Statement of Material Facts ("DRPSMF") ¶ 3, Dkt. No. 60.) Franklin is a financial service company that provides financing for purchase orders and accounts receivable. (*Id.* ¶ 1.) In April 2022, Franklin purchased some of Fuell's accounts receivable, including those at issue here. (*Id.* ¶ 7.) The terms

---

[1] Franklin's claims against Fuell are stayed due to Fuell's Chapter 7 bankruptcy filing. (*See* Dkt. Nos. 74, 75.)

of the transaction and ongoing relationship between Franklin and Fuell were set out in an

Accounts Receivable Purchase Agreement ("ARPA") between Franklin and Fuell, signed on

April 12, 2022. (*Id.*) At the same time, in connection with the ARPA, Terny, Fuell's CEO,

entered into a separate Accounts Guaranty Agreement ("Validity Guaranty") with Franklin. (*Id.*

¶ 8.) In the Validity Guaranty, Terny unconditionally guaranteed that, among other things,

"[Fuell] will reimburse [Franklin] on demand the full face amount of any assigned or sold

account with respect to which [Fuell] has breached any representation, warranty, or covenant to

[Franklin]." (Validity Guaranty § 8, Dkt. 51-1.)

Pursuant to a distribution agreement, Fuell sold 288 electric bicycles to Ed Tucker

Distributor, Inc. ("Tucker") for a total purchase price of $914,832.00. (DRPSMF ¶ 24.) Tucker

took possession of three shipments of electric bicycles on May 6, June 2, and June 3, 2022. (*Id.*

¶¶ 11–15.) Tucker was invoiced for each shipment separately. (*Id.* ¶¶ 10, 12, 14.) As

contemplated under the ARPA, Fuell sold the accounts receivable corresponding to those

shipments to Franklin. (*Id.* ¶ 16.) In exchange, Franklin advanced to Fuell a total of $719,958.28:

$242,384.92 on May 9, 2022, $297,223.43 on June 3, 2022, and $180,349.93 on June 6, 2022.

(*Id.*) As of the dates on which Franklin advanced sums of money to Fuell—May 9, June 3, and

June 6, 2022—there were no disputes between Fuell and Tucker regarding the electric bikes

shipped pursuant to the invoices at issue. (Pl.'s Resp. to Defs.' Statement of Additional Material

Facts ("PRDSAMF") ¶¶ 2–4, Dkt. No. 64.) On June 14, 2022, Tucker informed Fuell that, in

response to outreach from Franklin, it planned to tell Franklin that payments due to Franklin

were on hold. (DRPSMF ¶ 17.)

Franklin contends that this refusal to pay constitutes a "dispute" under the ARPA and its

incorporated Standard Provisions and Definitions ("SPD"). The SPD defines "Related

Documents" as including "all agreements, instruments and documents, other than the [ARPA], including . . . the guaranties . . . executed by or on behalf of [Fuell], any Guarantor or other Obligor or any other Person and delivered to Franklin . . . in connection with the Obligations or the transactions contemplated by the [ARPA]." (SPD ¶ 1.53, Dkt. No. 10-1.) "Guarantor" is defined as "any Person . . . guaranteeing, whether a full guaranty or a validity guaranty, the Obligations of [Fuell] under the [ARPA] or any portion thereof." (*Id.* ¶ 1.27.) "Obligations," in turn, include "all of [Fuell]'s present and future obligations to Franklin, of every kind and nature whatsoever, without limitation," including "all of [Fuell]'s liability for breach of any warranty, representation, covenant or duty, of every kind and description that [Fuell] owes to Franklin under the [ARPA] or any other Related Document." (*Id.* ¶ 1.39.) As relevant here, an "Event of Default" occurs when "any statement, warranty, or representation made by [Fuell] in [the ARPA] or in any Related Document shall prove to have been incorrect, incomplete or misleading in any material respect on the date when made or becomes untrue or incorrect in any material respect thereafter." (*Id.* ¶ 1.24.) Critically, "Dispute" is defined to mean "any cause for nonpayment of one or more Accounts, including, without limitation, any alleged or actual defense, setoff, reduction, claim or counterclaim asserted by an Account Debtor regarding any Account whatsoever or howsoever arising, whether or not bona fide." (*Id*. ¶ 1.21.) Moreover, the ARPA provides that when Franklin is forced to pursue collection of an "Account subject to Dispute," Franklin is entitled to recover "fifteen percent of the disputed amount as reasonable liquidated damages to compensate Franklin for the extra work and time involved in collecting such Account subject to Dispute." (ARPA ¶ 10.2, Dkt. No. 51-1.)

On June 15, 2022, based on the provisions of the ARPA, Franklin demanded that Fuell reimburse the financing it had provided. (DRPSMF ¶ 23.) On July 1, 2022, Franklin sued Fuell,

Terny, and Tucker. (*Id.* ¶ 29.) Even though Franklin eventually reached a settlement with Tucker, which made payments of $648,866 and then defaulted, Fuell has not paid Franklin. (*Id.* ¶ 32.) Franklin argues, and Terny contests, that as a result, there remains $265,966 due on the disputed accounts, $137,244 in reasonable liquidated damages, plus attorneys' fees and costs. (*Id.* ¶ 33.)

Fuell has since filed for bankruptcy, staying all proceedings against it. (Dkt. No. 74.) Now before the Court are Franklin and Terny's cross-motions for summary judgment. (Dkt. Nos. 49, 59.)

## DISCUSSION

Summary judgment is appropriate if the admissible evidence considered as a whole shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law, even after all reasonable inferences are drawn in the nonmovant's favor. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011). When cross-motions for summary judgment are filed, inferences are drawn in favor of the party against which the motion under consideration is made. *Siliven v. Ind. Dep't of Child Servs.*, 635 F.3d 921, 925 (7th Cir. 2011).

In its motion, Franklin argues that it is entitled to summary judgment because the undisputed facts show: (1) Tucker's accounts were disputed, and (2) Terny breached the Validity Guaranty. Franklin also asserts that upon finding that Terny is liable for breach, Franklin is entitled to compensatory and liquidated damages. For his part, Terny contends that the Court should grant summary judgment in his favor because: (1) Fuell truthfully represented the status of the Tucker accounts receivable on the dates of the relevant triggering events (*i.e.*, the invoice purchase dates and the advance dates), and (2) Terny did not breach the Validity Guaranty.

4

### I.     The Definition of "Dispute"

In Illinois, the "elements of a claim for breach of contract are: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a material breach by the defendant; and (4) damages." *Balmoral Racing Club, Inc. v. Churchill Downs, Inc.*, 953 F. Supp. 2d 885, 895 (N.D. Ill. 2013). The parties do not dispute the existence of a valid and enforceable contract. Instead, the crux of their disagreement is whether there was any relevant material breach of contract and the nature of any such breach. The parties' disagreement about the element of breach largely comes down to a quarrel about how the term "dispute" should be interpreted in the ARPA and the Validity Guaranty.

When a court interprets a contract, "the primary objective is to give effect to the intention of the parties." *Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011). The "court will first look to the language of the contract itself to determine the parties' intent." *Id.* "If the words in the contract are clear and unambiguous, they must be given their plain, ordinary and popular meaning. However, if the language of the contract is susceptible to more than one meaning, it is ambiguous." *Id.* (internal citations omitted). Moreover, in Illinois, legal "instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction are regarded as one contract and will be construed together." *Indigo Old Corp. v. Guido*, 29 F.4th 856, 858 (7th Cir. 2022) (collecting cases).

The term "dispute" is defined in the SPD as "any cause for nonpayment of one or more Accounts." (SPD ¶ 1.21.) Defendants argue that Franklin has only identified Tucker's refusal to pay for the electric bicycles but, for a dispute to arise, Tucker must have provided a justification for nonpayment. Interpreting "cause for nonpayment" to mean a "justification" for nonpayment, Defendants contend that simply refusing to pay is not a justification for nonpayment and is not, under the SPD's definition, a dispute. Defendants assert that this meaning is clear on the face of

the ARPA and the SPD, but even if there is ambiguity, canons of contract interpretation support their asserted meaning.

The Court agrees that the SPD's definition of "dispute" is unambiguous. However, in context, the unambiguous definition is the opposite of that urged by Defendants. As used in the SPD, the plain meaning of "cause" is "[s]omething that produces an effect or result." *Cause*, Black's Law Dictionary (12th ed. 2024). Defendants' attempt to limit the definition to "justification" is unavailing. "A contract must be construed as a whole, viewing each provision in light of the other provisions. The parties' intent is not determined by viewing a clause or provision in isolation, or in looking at detached portions of the contract." *Thompson*, 948 N.E.2d at 47 (internal citations omitted). The features of the contract at issue, even just the rest of the definition provided for "dispute," indicate the parties' intent to give that term a broad meaning. The remainder of the definition states that it applies to any dispute "whatsoever or howsoever arising" and applies "whether or not" the dispute is "bona fide." In the context of an agreement designed to protect the interests of a creditor taking on the risk of collecting accounts receivable from a third party, the language of the provision evinces an intent for that protection to sweep broadly. Thus, in the context of the agreement, the phrase "cause for nonpayment," as used in the definition of "dispute," plainly sweeps broadly enough to encompass a simple refusal to pay, whether or not a justification was provided.

Defendants cite cases suggesting that "for cause" has been interpreted as having the opposite meaning as "for any reason." *E.g.*, *Loebl Schlosman & Hackl, Inc. v. Al Abosy*, No. 1-20-0878, 2021 WL 4963262, at *11 (Ill. App. Ct. Oct. 26, 2021). However, those cases are in the context of employment contracts, or similar agreements, where an alternative interpretation would render the phrase "for cause" a nullity. *Id.* The cases highlight the importance of not

considering contract provisions in isolation. But they do not support the specific interpretation urged by Defendants in this case.

Moreover, because the word "cause" in the SPD is not ambiguous, the Court need not resort to canons of interpretation. *See Citizens Ins. Co. of Am. v. Wynndalco Enters.*, 70 F.4th 987, 999 (7th Cir. 2023) (noting that canons "typically come[] into play only if there is some doubt about the meaning of the terms used in a contract or statute"). But even if the Court were to apply the *noscitur a sociis* canon of interpretation, as urged by Defendants, the canon would not resolve the question in their favor.

"The principle of *noscitur a sociis*—a word is known by the company it keeps—is used to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words." *Id.* at 1004 (alterations and internal quotation marks omitted). The definition of "dispute" gives examples of "cause for nonpayment," "including without limitation, any alleged or actual defense, setoff, reduction, claim or counterclaim." Defendants argue that this short list of examples demands that the Court limit its construction of "dispute." However, the definition, in another indication that the term is meant to be construed broadly, specifically notes that "dispute" should be interpreted to include, but not be limited to, those examples. Additionally, again keeping in mind the goals of the ARPA, a broad definition of "cause" would not be "so broad that it is inconsistent" with the list of examples. *Id.* The ARPA is meant to protect Franklin's ability to collect on the accounts receivable that it purchased. The definition's list of examples is a standard set of risks against which Franklin seeks to guard. But none of the terms is inconsistent with a definition of "cause" that also encompasses other events leading to nonpayment, such as a simple refusal to pay.

In sum, the Court holds that "dispute," as defined in the SPD and used throughout the agreements at issue here, is not limited to a proffered "justification" for nonpayment and includes Tucker's refusal to pay, whether that refusal was based on a bona fide reason or not.

## II.     Timing of the Dispute

The Court now turns to the question of whether a dispute existed or arose between Tucker and Fuell sufficient to constitute an event of default under the SPD.

The SPD provides that the representations and warranties in paragraph 2 of the SPD are "automatically reaffirmed and restated" by Fuell when (1) "each Account is purchased" by Franklin or (2) "any Advance or financial accommodation is made." (SPD ¶ 2.) Defendants refer to these discrete times as "triggering events." Relevant here, Fuell represented that the accounts purchased by Franklin under the ARPA "represent[ed] an undisputed, bona fide and existing obligation of [Tucker]" and that "there are no Disputes existing or asserted with respect to" the accounts and Fuell. (*Id.* ¶ 2.29(ii), (v).)

Defendants argue that the representation that no disputes existed was true when made, on April 12, 2022, and remained true when reaffirmed on the dates of the "triggering events": May 9, June 3, and June 6, 2022, when the money was advanced to Fuell. Franklin does not contest Defendants' statement that no dispute existed on these dates. However, it argues that the language of the SPD allows a dispute arising after these representations were made to constitute an event of default. The Court agrees.

Recall that, as relevant here, an "Event of Default" under the SPD occurs when "any statement, warranty, or representation made by [Fuell] in this Agreement or in any Related Document shall prove to have been incorrect, incomplete or misleading in any material respect on the date when made *or becomes untrue or incorrect* in any material respect thereafter." (*Id.* ¶ 1.24 (emphasis added).) Defendants argue that, because there were no disputes on the dates of

8

the triggering events and because no evidence was later revealed showing that disputes did in fact exist on those dates, there was no event of default. In essence, Defendants reject the idea that they had "ongoing obligations to represent the absence of disputes at all times." (Defs.' Mot. for Summary Judgment 7, Dkt. No. 59.)

While Defendants may not have had an ongoing obligation to "represent the absence of disputes at all times," the contract, read in full, does reveal that the ARPA contemplates disclosure of disputes arising after the triggering events. For example, the affirmative covenants in the SPD state that "until the [ARPA] shall be terminated and all Obligations shall have been paid in full, [Fuell] will . . . [i]mmediately . . . notify Franklin of any Dispute . . . or any other fact or circumstances that is likely to give rise to any Event of Default." (SPD ¶¶ 3, 3.14.) Similarly, the ARPA states that "[Fuell] will notify Franklin promptly if any Dispute arises." (ARPA ¶ 6.1.) These provisions, along with the definition of "event of default," show that the parties intended the agreement to take changing circumstances into account.

Contrary to Defendants' argument, to interpret the phrase "becomes untrue or incorrect" as only applying to the truth of the statement on the day it was made would render that language, not the triggering event language, superfluous. *See Land of Lincoln Goodwill Indus., Inc. v. PNC Fin. Servs. Grp., Inc.*, 762 F.3d 673, 679 (7th Cir. 2014) ("[W]henever possible we attempt to give meaning to every provision of the contract and avoid a construction that would render a provision superfluous."). The subsequent availability of evidence indicating that a statement was untrue or incorrect on the day it was made does not mean that the statement "[became] untrue or incorrect." Rather, it was always untrue or incorrect, but the parties later became aware that it was incorrect. The clause "or becomes untrue or incorrect in any material respect thereafter" is

unnecessary to capture that situation. Given Defendants' construction, the phrase would be superfluous.

In contrast, the triggering event language simply identifies two key points in time where the representation that no dispute exists with respect to the accounts is especially important. The requirement that the representation be made at those critical points in the lending relationship (*i.e.*, account purchase and cash advance) does not make provisions requiring subsequent disclosures redundant. Similarly, it is not redundant to deem a dispute arising after-the-fact an event of default. The language is admittedly broad, but in the context of a creditor-debtor relationship, broad language that functions to mitigate risk aligns with the apparent intent of the parties.

The parties do not contest that no dispute existed on or before June 6, 2022. However, the parties also do not contest that on June 14, 2022, Tucker reported that it would be telling Franklin that its payments were on hold, or that Tucker did then refuse to pay Franklin. As a result, and as discussed above, a dispute arose with Tucker with respect to the accounts receivable purchased by Franklin. When that dispute arose, the representation made by Fuell that no dispute existed became untrue in a material respect. Accordingly, an event of default under the SPD occurred on June 14, 2022. Moreover, when the event of default occurred, Franklin had the right to declare all Fuell's obligations immediately due and payable, including the gross amount of the purchased accounts, which Franklin was entitled to charge back to Fuell in the event of a dispute being asserted as to an account. (SPD ¶ 5.1; ARPA ¶6.3.)

### III. Scope of Liability

Although the Court finds that Fuell defaulted under the ARPA, Fuell is in bankruptcy. As a result, Terny's liability is all that is presently at issue. Franklin asserts that when the dispute discussed above arose, Terny breached representations made in the Validity Guaranty.

Specifically, Franklin argues that Terny breached Section 3 of the Validity Guaranty, wherein he represented that the goods delivered by Fuell to its customers "have been and shall be received and accepted by such customers without any claim, defense, [or] dispute, against [Fuell]"; and Section 4, guaranteeing that "the amount of each invoice is not disputed." (Validity Guaranty §§ 3–4.)

Defendants argue that, at the time the bicycles were delivered to Tucker, there was no claim, defense, or dispute as to the accounts. They further argue that the amount of the invoices was never disputed. Defendants' position on these points may have some merit. The rule of interpretation stating that contemporaneous agreements "will be construed together," *Indigo Old Corp.*, 29 F.4th at 858, does not mean that language in the agreements that is specific to Fuell can automatically be applied to Terny, or vice versa. Note that, although "event of default," as defined in the SPD, applies to disputes that arise after-the-fact, that specific definition only applies to "statement[s], warrant[ies], or representation[s] *made by [Fuell]* in [the ARPA] or in any Related Document." (SPD ¶ 1.24(c) (emphasis added).) The provision is specific to representations made by Fuell and does not, on its face, encompass representations made by Terny. (*Compare* SPD ¶ 1.24(c) (covering statements "made by Seller"), *with* SPD ¶ 1.24(d), (e), (i) (covering conditions related to "Seller or a Guarantor," thereby distinguishing between the two).) Accordingly, it is not clear that, with respect to Terny, the Court must consider the dispute that arose on June 14, 2022, which was after the bicycles had already been delivered to, and accepted by, Tucker.

Ultimately, however, the Court need not dwell on whether Terny breached Sections 3 or 4 of the Validity Guaranty because Section 8 of the Guaranty resolves the question of Terny's liability. As mentioned above, in that section, Terny unconditionally guaranteed that "[Fuell] will

11

reimburse [Franklin] on demand the full face amount of any assigned or sold account with respect to which [Fuell] has breached any representation, warranty, or covenant to [Franklin]." (Validity Guaranty § 8.) The Court determined above that Fuell breached its representations to Franklin. It is undisputed that Fuell has not reimbursed Franklin as demanded. Moreover, it is undisputed that Terny has not paid Franklin as demanded under the Validity Guaranty. (DRPSMF ¶ 28.) As a result, Terny is in breach of the unconditional Validity Guaranty and is liable for the full face value of the accounts at issue here.

That said, and contrary to Franklin's position, the Court sees no basis for holding Terny liable for the liquidated damages provided for in the ARPA. (ARPA ¶ 10.2 (allowing 15% of disputed accounts or, in this case, $137,244, as reasonable liquidated damages).) Once again, the language of the ARPA specifies that Franklin may charge the Seller (Fuell) the fifteen percent liquidated damages amount. Fuell's obligations, as defined in the SPD, include that amount. (SPD ¶ 1.39 (defining "obligations" to mean "any and all of Seller's present and future obligations to Franklin, of every kind and nature whatsoever" and including "all of Seller's liability for breach of any warranty, representation, covenant or duty, of every kind and description that Seller owes to Franklin under the [ARPA] or any other Related Document").) And while Franklin may exercise any remedies available in the ARPA or any of the Related Documents, including the Validity Guaranty, the Validity Guaranty does not specify any remedies.

"A guarantor['s] . . . understanding is strictly construed; his liability may not be varied or extended beyond its precise terms by construction or implication; and he is bound only to the extent and in the matter and under the circumstances pointed out in his obligation." *Exch. Nat. Bank of Chi. v. Bergman*, 505 N.E.2d 1236, 1238 (Ill. App. Ct. 1987). Nothing in the language of

the Validity Guaranty, or for that matter the ARPA or SPD, suggests that Terny is liable for all of Fuell's obligations. And more specifically, the Validity Guaranty provides no textual basis to assert that the liquidated damages amount applies to Terny.

Accordingly, the Court finds that Terny is liable for $265,966—the amount due on the disputed Tucker accounts less the amount for which Tucker settled with Franklin. But he is not liable for liquidated damages.

## CONCLUSION

For the reasons stated above, Franklin's motion for summary judgment (Dkt. No. 49) is granted, and Terny's cross-motion for summary judgment (Dkt. No. 59) is denied. The Court finds that Franklin is entitled to judgment against Terny in the amount of $265,966. Terny's motion to strike new evidence presented in Franklin's reply brief (Dkt. No. 67) is denied as moot.

ENTERED:

Dated: April 8, 2026

_____
Andrea R. Wood
United States District Judge

13